STATE OF IOWA v. LAFAYETTE BIGGS, Appellant.

Attempt to Rape: EVIDENCE. Defendant made indecent proposals, and upon being denied asked to "let the matter drop." It is said he looked vicious and "lunged" at prosecutrix. This last he denies. He started after her to dissuade her from telling her husband. *Held*, conviction was unwarranted.

*Appeal from Mills District Court.*—HON. W. S. LEWIS, Judge.

WEDNESDAY, DECEMBER 19, 1894.

Indictment for an assault with an intent to commit rape. Verdict of guilty, and a judgment, from which the defendant appealed.—*Reversed.*

*A. E. Cook* and *C. E. Dean* for appellant.

*Shirley Gilliland* and *John Y. Stone*, attorney general, for the state.

Granger, C. J.—The only question is as to the sufficiency of the evidence to sustain the verdict. It is clearly insufficient. The prosecuting witness was a Mrs. Piburn. It is true that the defendant went to her house, and made indecent proposals to her, which she rejected, that she ran to her husband, who was working in the yard near by, and told him that the defendant had been indecent to her; and that the defendant ran away,

and her husband followed him with a pitchfork some one hundred and fifty rods or more. The prosecuting witness, after stating the language of defendant's proposal to her and her answers, none of which in the least degree indicated an intent to accomplish his purpose by force, or in any way except by mere solicitation or persuasion, says that she said to him: "'No, sir, Lew Biggs; if I ever done anything to cause you to talk to me in this way, the Lord knows I am innocent.' I then started out ,and he started to lunge for me. I then told him that I was going to tell Ed (that's my husband), and he said, 'If you are not that kind, let us just drop it, and say no more about it.' I said, 'No, sir; I'm going to tell Ed;' and I started on a run to tell Mr. Piburn. When he started toward me, he looked vicious. I ran out of the house to where my husband was, and told him Lew Biggs said I was undecent.'" The above is the language relied upon in argument to sustain the verdict. This evidence in the particular as to his starting to lunge for her is contradicted by the defendant, and there is no other evidence on the subject. Defendant does not deny the improper proposal. But, conceding her statement to be true, such an act is not only not consistent with any other reasonable hypothesis than that of guilt, but it is equally consistent with a purpose to gratify his desires otherwise than by such force as would constitute rape. The word "lunge" likely means a sudden pass or movement towards her, unexplained; that is the most that can be said of it. The manner of the movement, whether as an effort to seize her or otherwise, is not stated. There is nothing in his language to her to aid the claim that "lunge" means forcible defilement. All of his language to her indicated a purpose just the reverse of force. They agree that he said to her, after her refusal, "Let's drop it, if you are not that kind." Her statements, of when he said that,

are not the same at all times, but, when finally asked, "Where was it, and when, he made that remark?" she said, "He made that remark, and then I started, and he started after me." It then appears that he attempted to induce her not to tell her husband, which she insisted upon doing, and he left. The only reasonable inference from the testimony as to his following her is that he did it in an effort to persuade her to drop the matter, and not tell her husband. It may further be said that her complaint to her husband at the time was not of an assault upon her, but merely that he said she was "indecent." She then seemed to think that his offense consisted in the *words* he had used, and her *testimony* is of the same tenor.     The motion for a new trial should have been sustained.—*Reversed.*